UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| REBECCA S. MCCORKHILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | No. 1:13-cv-00656-TWP-MJD |
| CAROLYN W. COLVIN Acting ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Rebecca McCorkhill requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). *See* 42 U.S.C. §§ 416(i), 423(d). For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be **AFFIRMED**.

### I. Procedural History

McCorkhill filed an application for DIB on August 31, 2009, alleging an onset of disability of July 21, 2009. McCorkhill's application was denied initially and on reconsideration. McCorkhill requested a hearing which was held on June 24, 2011 before Administrative Law Judge James Norris ("ALJ"). A subsequent hearing was held on January 23, 2012. The ALJ denied McCorkhill's application on January 30, 2012. The Appeals Council denied McCorkhill's request for review on February 21, 2013, making the ALJ's decision the final decision for purposes of review. McCorkhill filed her Complaint on April 22, 2013.

## II. Factual Background and Medical History

Rebecca McCorkhill was involved in a motor vehicle accident in May 2007 while performing her duties as a bus driver. [R. at 349.] McCorkhill met with Dr. Elizabeth Treese in September 2008 for numbness and tingling in the front of her legs and right foot as well as neck pain. [R. at 504-05.] An MRI was conducted which revealed minimal disc bulge at L3-4 and mild disc space desiccation, but was otherwise normal. [*Id.*]

McCorkhill attended physical therapy starting November 2008 and was discharged in January 2009. [R. at 338-47.] She then met with orthopedic specialist Joseph Duncan M.D. in January 2009. [R. at 349-350.] Dr. Duncan ordered x-rays of her lumbar spine and neck. [*Id.*] The lumbar spine displayed mild degenerative change, however no evidence of significant abnormality. [*Id.*] X-rays of the neck displayed mild to moderate degeneration in the mid cervical spine. [*Id.*] Dr. Duncan also noted that there was no evidence of significant radicular or extremity pain. [*Id.*]

In March 2009, McCorkhill was involved in another vehicle accident. In April 2009, McCorkhill was examined by neurologist Katherine Kobza, M.D. and described the results of an MRI and EMG performed in March 2009. [R. at 358-59.] The MRI of the cervical spine revealed a shallow spur on the right C4-5 level with probable compression of the right C5 nerve root. [*Id.*] The lumbar MRI was found to be essentially normal. The EMG revealed possible C6 radiculopathy on the right. [*Id.*] McCorkhill continued to seek treatment from Dr. Kobza and would receive back injections but with minimal relief.

McCorkhill had surgery on July 22, 2009 for anterior cervical discectomy and fusion at the C4-5 level. [R. at 513.] McCorkhill's surgeon Rick Sasso, M.D. believed that the surgery was a success with McCorkhill reporting that her neck and arm pain was gone. [R. at 512.] However, McCorkhill's pain subsequently returned.

Dr. Neal of the Disability Determination Bureau ("state agency") completed a Physical Residual Functional Capacity ("RFC") Assessment in October 2009. [R. at 585-592.] Dr. Neal did not examine McCorkhill, but based his findings on the medical record. Dr. Neal opined that McCorkhill could lift twenty pounds occasionally and ten pounds frequently, could stand/walk for six hours in a workday and sit for six hours in a workday, and had unlimited pushing/pulling in all directions. [R. at 586.] With regard to McCorkhill's postural limitations, Dr. Neal opined that McCorkhill could never climb ladders/ropes/scaffolds and could only occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl. [R. at 587.] This assessment was affirmed by state agency physician F. Lavallo, M.D. [R. at 650.]

McCorkhill had another EMG in November 2009 which was mildly abnormal and revealed chronic C5-6 radiculopathy on the right side. [R. 632-34.] She continued to be treated by Dr. Kobza. In February 2010, Dr. Kobza noted that McCorkhill continued to have pain for reasons that were unclear, explaining that while McCorkhill has post-surgery cervical radiculopathy and some lumbar spurring, they appear to be disproportionate to her pain. [R. at 614.] Over the course of the following year, McCorkhill continued to have good days and bad when it came to managing her pain and she regularly sought treatment.

In December 2009, McCorkhill had a mental status examination with Ceola Berry, Ph.D., HSPP. [R. at 595-97.] Dr. Neal's impression was that McCorkhill suffered from bereavement. [R. at 597.] A Psychiatric Review Technique form was completed by state agency psychologist F. Kladder, Ph.D. in December 2009. [R. at 599-612.] Dr. Kladder found that McCorkhill did not have a medically determinable mental impairment, but also noted that there was insufficient evidence in the record. [R. at 599.]

State agency psychologist B. Randal Horton, Psy.D. completed another Psychiatric Review Technique in March 2010. [R. at 636-49.] Dr. Horton recognized that McCorkhill had impairments of bereavement and depression, but opined that they were not severe. [R. at 636, 648.]

McCorkhill was referred by the Commissioner to meet with Glenn Davidson, Jr., Ph.D., HSPP for a mental examination conducted in October 2011.[1] [R. at 738-43.] McCorkhill mentioned somatoform to Dr. Davidson, however, Dr. Davidson reported that McCorkhill was unclear on this issue. [R. at 741.] Dr. Davidson diagnosed McCorkhill with Major Depressive Disorder. [R. at 741.]

In November 2011, McCorkhill met with Schvon Cummings, M.D. for a consultative examination. [R. at 745-48.] Dr. Cummings' impression was that McCorkhill had chronic pain secondary to bulging vertebral discs, degenerative changes and fibromyalgia. [R. at 747.] Dr. Cummings completed a medical source statement with regard to McCorkhill's physical impairments as it related to her ability to do work. [R. at 750-55.] Dr. Cummings opined that McCorkhill could only lift/carry up to twenty pounds occasionally and never lift anything heavier. [R. at 750.] Dr. Cummings further opined that McCorkhill would only be able sit thirty minutes at one time and three hours total, stand for ten to fifteen minutes at one time and one hour total, and walk for ten minutes at one time and one hour total. [R. at 751.]

### III.   Applicable Standard

To be eligible for DIB, a claimant must have a disability under 42 U.S.C. § 423. Disability is defined as "the inability to engage in any substantial gainful activity by reason of

---

[1] At the June 2011 hearing, the ALJ requested more information with regard to McCorkhill's mental impairments. The hearings will be discussed in further detail in Section V, *infra*.

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 404.1520(b). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities), she is not disabled. 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, App. 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is disabled. 20 C.F.R. § 404.1520(d). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1520(f). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

In reviewing the ALJ's decision, the ALJ's findings of fact are conclusive and must be upheld by the court "so long as substantial evidence supports them and no error of law occurred." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The court may not reweigh the evidence or substitute its judgment for that of the

ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). In order to be affirmed, the ALJ must articulate his analysis of the evidence in his decision; while he "is not required to address every piece of evidence or testimony," he must provide some glimpse into [his] reasoning . . . [and] build an accurate and logical bridge from the evidence to [his] conclusion." *Dixon*, 270 F.3d at 1176.

## IV. The ALJ's Decision

Applying the five-step analysis, the ALJ found at step one that McCorkhill had not engaged in substantial gainful activity since July 21, 2009, the alleged onset date. At step two, the ALJ found that McCorkhill had the following severe impairment: degenerative disc disease of the cervical and lumbar spine. The ALJ also determined that McCorkhill had a medically determinable mental impairment of depression/bereavement, however, he found this not to be severe.

At step three, the ALJ determined that McCorkhill did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

Next, the ALJ found that McCorkhill had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) except McCorkhill's work must allow her to alternate between sitting and standing at least five minutes per hour and require no climbing of ropes, ladders and scaffolds.

At step four, the ALJ determined that McCorkhill was capable of performing her past relevant work as a shipping clerk, bank teller, and waitress. Therefore, the ALJ determined that McCorkhill was not disabled.

## V. Discussion

The central issue in this matter is whether there is substantial evidence to support the ALJ's decision that McCorkhill was not disabled. *Dixon*, 270 F.3d at 1176. McCorkhill raises three arguments on review: 1) substantial evidence fails to support the ALJ's decision that McCorkhill was not disabled due to chronic neck and low back pain; 2) the ALJ's credibility determination is patently erroneous because it is contrary to Social Security Ruling 96-7p; and 3) substantial evidence fails to support the ALJ's step four determination that McCorkhill was not disabled because she could perform some of her previous jobs.

McCorkhill first argues that the ALJ erred by not finding that McCorkhill was disabled on the basis of chronic pain. McCorkhill argues that the ALJ refused to acknowledge Dr. Manders' testimony with regard to her chronic pain. At the first hearing, Dr. Manders testified that McCorkhill had developed a chronic pain syndrome for which a cause could not be determined. [R. at 67.] He further testified that her chronic pain may be psychological due to her depression. [*Id.*] However, Dr. Manders clarified that he was not a psychologist and while an expert in neurology and pain management, he could not properly testify to what extent McCorkhill's psychological impairments may be a contributing factor to her chronic pain. [R. at 67-70.] When questioned about somatoform pain disorder (Listing 12.07) on examination by McCorkhill's attorney, Dr. Manders testified that since this is a listing for a mental disorder, he was not qualified to make a diagnosis under this listing, but it was his opinion that McCorkhill's

7

pain would not meet this listing.[2] [R. 70-71.] Dr. Manders also did not dispute the physical RFC assessment provided by the state agency physicians. [R. at 68-69, 585-92.] At the end of Dr. Mander's testimony, the ALJ and McCorkhill's attorney agreed that to conduct a proper evaluation on pain, there needed to be further evidence gathered related to McCorkhill's depression. [R. at 72-75.] They also agreed that, since the issue of pain syndrome would require an expert on mental disorders, Dr. Manders would not need to return for the next hearing. [R. at 75.]

At the subsequent hearing, Dr. Hutson testified as to McCorkhill's physical impairments and Dr. Olive testified regarding the mental impairments. [R. at 36-47.] Neither expert testified on the issue of McCorkhill's pain or how her psychological impairments may have played a role. At this hearing, Plaintiff again had the benefit of counsel.[3] It was Dr. Hutson's opinion that McCorkhill was capable of performing light work with the exceptions outlined in the ALJ's RFC assessment and Dr. Olive's opinion was that McCorkhill did not have a severe mental impairment. [R. at 39-40, 46.] While counsel should have been aware that the purpose of the rehearing was to determine the extent that McCorkhill's psychological impairment may have played a role in her pain, counsel failed to question either expert on this issue upon examination. "[A] claimant represented by counsel is presumed to have made his best case before the ALJ." *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007). As such, the ALJ had no duty to further develop the record concerning McCorkhill's complaints of pain and was entitled to rely on the testimony of the experts at the second hearing. *Brewer v. Chater*, 910 F. Supp. 1335, 1343 (N.D. Ill. 1995); *Mullinax v. Astrue*, 1:08-cv-0284-TAB-WTL, 2009 WL 899658, *3 (S.D. Ind. 2009).

---

[2] Somatoform disorders are "physical symptoms for which there are no demonstrable organic findings or known physiological mechanisms." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.07.
[3] Although McCorkhill was represented by different counsel at the second hearing, both attorneys from the first and second hearings were from the same law firm. McCorkhill is now represented by a different law firm on judicial review.

8

In her brief, Plaintiff also cited to various medical records that she alleges the ALJ either ignored or arbitrarily rejected supporting Plaintiff's allegations of pain. However, not only did the ALJ discuss most of this evidence, Dr. Hutson also specifically discussed this evidence in his concurrence of the ALJ's RFC determination. [R. at 22-26, 36-47.] An ALJ is also not required to discuss every piece of evidence so long as there is substantial support for his determination. *Dixon*, 270 F.3d at 1176.

Next, McCorkhill argues that the ALJ arbitrarily rejected the opinion of Dr. Cummings who opined that McCorkhill was not able to perform full time work. [R. at 750-55.] The ALJ properly articulated his reasons for according little weight to Dr. Cummings explaining, as supported by the testimony of Dr. Hutson, that the severe limitations suggested for McCorkhill's ability to sit, stand and walk are inconsistent with his own medical findings and are not supported by objective medical records or clinical findings. [R. at 26, 30-31, 745-48.]

McCorkhill next argues that the ALJ's credibility determination is patently erroneous because it is contrary to Social Security Ruling ("SSR") 96-7p. However, Plaintiff's counsel makes no attempt to cite to any facts to support this conclusion and instead inserts boilerplate language typically found in counsel for Plaintiff's briefs. As each factor of SSR 96-7p was specifically discussed in detail, Plaintiff's entire argument is baseless and is therefore waived. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991); *Firkins v. Astrue*, No. 1:09-cv-00923-JMS-TAB, 2010 WL 3037257, *4 (S.D. Ind. Aug. 3, 2010).

Finally, McCorkhill argues that substantial evidence fails to support the ALJ step four determination that McCorkhill could perform her past relevant work and was therefore not disabled. For this argument, McCorkhill relies on the opinion of Dr. Cummings. As explained above, the ALJ did not err in according little to no weight to Dr. Cummings' opinion.

## VI. Conclusion

For the reasons set forth above, substantial evidence supports the ALJ's conclusion that Norton was not disabled. The Magistrate Judge recommends that the Commissioner's decision be **AFFIRMED**. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

Date: 05/22/2014

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Patrick Harold Mulvany
patrick@mulvanylaw.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov